**E-FILED**
Tuesday, 26 September, 2006  10:14:29 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

JERMAINE JACKSON,

      Plaintiff,

    v.                                   05-CV-1110

RICHARD MORRIS and
STEWART INMAN,

      Defendants.

### Order

Plaintiff challenges his treatment during his incarceration in Knox County Jail from March 11, 2005, to April 19, 2005.  He alleges he suffered excessive force, unconstitutional conditions of confinement, and an unconstitutional deprivation of his property.  (6/13/05 Court Order).

Before the Court are Defendants' unopposed motions for summary judgment (d/e's 46, 49).  The undisputed facts show that Plaintiff's claims have no factual merit. Accordingly, the motions will be granted and this case terminated.

### Summary Judgment Standard

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law.  *Outlaw v. Newkirk*, 259 F.3d 833, 837 (7th Cir. 2001), *citing Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P.56(c).  This burden can be satisfied by "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case."  *Celotex*, 477 U.S. at 325.  If such a

showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Outlaw*, 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir. 1994). In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir. 1992).

### Allegations

The Court recounts the allegations for background and context. The Complaint alleges that, in March, 2005, Plaintiff was returned to the Knox County Jail after being sentenced in federal court. Defendant Morris, the Jail's administrator, allegedly put Plaintiff in the "hole" where Plaintiff remained until his transfer in April 2005.

On March 18, 2005, Defendant Inman allegedly sprayed Plaintiff with mace for no reason and took all Plaintiff's property. A nurse allegedly ordered Defendants to move Plaintiff out of the cell, because it was cold, plaintiff was sick, and Defendants were keeping him in the cell naked. Plaintiff alleges that Defendants kept him in the "hole" so they could hog tie him and torture him with no witnesses. They also allegedly threatened to assault him where no one could see. Plaintiff further alleges that Defendant Inman chained Plaintiff and threw him in the shower for no reason.

### Undisputed Facts

Plaintiff has not responded to the summary judgment motions. The plaintiff was warned that "[u]nder the court's local rules, a motion is deemed to be uncontested if no opposing brief is filed." (d/e's 48, 51). The same notices warned the plaintiff that, "If you do

2

not submit affidavits or other documentary evidence contradicting the defendants' assertions, the defendants' statement of facts will be accepted as true for purposes of summary judgment." *Id.*

The court has reviewed the defendants' proposed undisputed facts (d/e's 47, 50) and finds them well supported by their cites to the record. Accordingly, those undisputed facts are adopted and set forth below, essentially verbatim, to the extent relevant.

1. Defendant Richard Morris ("Morris") was employed by the County of Knox as the Jail Administrator at the Knox County Jail ("Jail") at the time of the events alleged in the Complaint (Complaint [13], p. 1).

2. Defendant Stewart Inman ("Inman") was employed by the County of Knox as a Deputy Sheriff/Corrections Officer at the Knox County Jail at the time of the events alleged in the Complaint. (Complaint [13], p. 1); Affidavit of Stewart Inman [Exhibit B], Paragraph 1.)

3. From September 17, 2004 to April 2005, Plaintiff was an inmate at the Jail. (Plaintiff's Deposition, pp. 9, 17).

4. On March 11, 2005, Plaintiff was taken to the federal court in Rock Island for sentencing.

5. While Plaintiff was at court on March 11, 2005, a shakedown was performed on Plaintiff's cell, and certain items of contraband were recovered. (Plaintiff's Deposition, pp. 64-66).

6. While Plaintiff was in the process of being transported to Federal Court on March 11, 2005, it was discovered that Plaintiff had candy with him. (Plaintiff's Deposition, p. 58).

He was also accused of yelling and being disrespectful in an incident report generated as a result of the incident. (Exhibit 6 to Plaintiff's Deposition).

7. When Plaintiff returned from sentencing on March 11, 2005, he was placed in the "hole," which refers to a segregation cell at the Jail. (Complaint [13], p. 4; Plaintiff's Deposition, p. 17).[1]

8. "The hole" is a cell with windows and a glass door, but the windows do not allow the inmate to see outside (Plaintiff's Deposition, p. 12-13). The difference between "the hole" and the rest of the cells at the Jail is that an inmate in "the hole" does not come out of his cell, but receives his meals in the cell rather than at a picnic table in the day room with other prisoners. (Plaintiff's Deposition, pp. 17-18).

10. Plaintiff had been put in the "hole" once or twice between September 17, 2004, and March 11, 2005. (Plaintiff's Deposition, p. 72). Plaintiff had a history of rule violations and incident reports throughout his stay at the Jail. (*See* Defendant Morris' Undisputed Facts ## 27-33). It is unnecessary to this Court's ruling to recount in detail all the incident reports Plaintiff received or their disposition.

11. Plaintiff stayed in segregation from March 11, 2005, until he left the Jail on April 19, 2005. (Plaintiff's Deposition pp. 12, 46).

----

[1]The plaintiff's claims involve the time frame beginning on March 11, 2005, after his sentencing. Logically, then, he was not a pretrial detainee but a prisoner during the relevant time. The distinction is important for legal analysis, but the legal conclusions would be the same in any event on the facts of this case. *See Mayoral v. Sheahan*, 245 F.3d 934, 938 (7th Cir. 2001)(pretrial detainee's claim falls under the due process clause of the Fourteenth Amendment, rather than under the Eighth Amendment, but "there is 'little practical difference between the two standards.'")(quoted cite omitted).

4

12. On March 18, 2005, Plaintiff pushed a button in his segregation cell for about thirty minutes because he needed more request slips, envelopes and paper. (Plaintiff's Deposition, pp. 19-21).[2]  After no officers came, Plaintiff began acting out and kicking the door of his cell. (Plaintiff's Deposition, p. 7).  Plaintiff kicked his door for approximately ten minutes.  (Plaintiff's Deposition, pp. 19-21). In addition, Plaintiff intentionally jammed the door of his cell with a comb so that the door could not be opened.  (Plaintiff's Deposition, pp. 22-24, 71).  Plaintiff testified in his deposition that he jammed the door to protect himself from Defendant Inman.  (Plaintiff's Deposition, p. 23).

13. An obstruction to the opening of a cell door poses a risk to the health and safety of the inmate in the event that a fire, medical problem, or other emergency makes it necessary to remove the prisoner from his cell quickly, and must be removed for the safety of the inmate. (Affidavit of Stewart Inman, Paragraph 4).

14. After Plaintiff began kicking the door, Inman and another officer came to Plaintiff's cell.  Inman instructed Plaintiff to remove the comb from the door immediately.  (Plaintiff's Deposition, pp. 24, 71; Affidavit of Stewart Inman, Paragraphs 2-5). Plaintiff refused. (Plaintiff's Deposition, pp. 24, 71; Affidavit of Stewart Inman, Paragraph 5).

15.  Defendant Inman warned Plaintiff mace would be used if Plaintiff did not free up his door.  Plaintiff replied, "I don't give a fuck," and continued to refuse to unjam the door. (Plaintiff's Deposition, pp. 71-72; Affidavit of Stewart Inman, Paragraph 7).

---

[2]Plaintiff initially said in his deposition that he wanted to speak to an officer to get out of the hole (Plaintiff's Deposition, p. 20), but later said the only reason he called the officer was for more request slips.  (Plaintiff's Deposition, p. 20).

16.    Inman then sprayed a burst of pepper spray into Plaintiff's cell via the "chuckhole," or meal tray slot, of the cell door.    (Plaintiff's Deposition, pp. 24-25, 71; Affidavit of Stewart Inman, Paragraph 9).  Shortly after Inman sprayed the pepper spray, Plaintiff unjammed the door.   (Plaintiff's Deposition, pp. 26, 72; Affidavit of Stewart Inman, Paragraph 9).

17.   After Plaintiff opened the door to his cell, Inman placed Plaintiff in a holding cell (Plaintiff's Deposition, p. 30; Affidavit of Stewart Inman, Paragraph 10).

18.   Plaintiff rinsed the pepper spray out of his eyes with water in his cell. Plaintiff testified in his deposition that he was not given this opportunity for twenty or thirty minutes. (Plaintiff's Deposition, pp. 31; Affidavit of Stewart Inman, Paragraph 10).[3]

19.   Plaintiff was seen by a nurse several hours after he was sprayed, when the nurse arrived at the Jail.  (Plaintiff's Deposition, pp. 30-31). The nurse provided eye drops to Plaintiff (Plaintiff's Deposition, pp. 72-73).  Plaintiff testified that he received some pants, his mattress and a blanket one day and a half after the incident.  (Plaintiff's Dep. p. 35).[4]

20. When Plaintiff was returned to his regular cell from the holding cell, all of his personal property had been removed from the cell.   (Complaint [13], p. 1).

---

[3]Plaintiff testified in his deposition that he was placed back in his cell naked with none of his property.  (Plaintiff's Deposition, pp. 32).

[4]Plaintiff's deposition testimony conflicts on the clothes question.  He testified first that he received pants after a day and a half, then later said it was two or three days, then later said he received a jumpsuit for a court date but cannot remember when, then later said he borrowed clothes from another inmate.  (Plaintiff's Dep. pp. 35-39).

21.  Inman removed all of Plaintiff's personal property from his cell on March 18, 2005 for Plaintiff's own safety, to prevent Plaintiff from again jamming shut the door to his cell, as well as for disciplinary reasons.   (Affidavit of Stewart Inman, Paragraphs 4, 12).

22. After removing Plaintiff's personal property from his cell, Inman delivered that property to the property room of the Knox County Jail with instructions that it be returned to Plaintiff after 72 hours (Affidavit of Stewart Inman, Paragraph 13).

23.  Defendant Morris was not present during the incident on March 18, 2005. (Plaintiff's Deposition, p. 72).

24.  On March 22, 2005, Plaintiff again acted out by intentionally breaking the sprinkler in his cell.  (Plaintiff's Deposition, pp. 73-74).  Additional incident reports were generated against Plaintiff which are not relevant here, except to say that the reports justified keeping Plaintiff in segregation at the Jail.  (Plaintiff's Deposition, p. 61-63; Exhibit 7 to Plaintiff's Deposition).

25.  Defendant Inman has not had possession of Plaintiff's personal property since he delivered it to the property room of the Knox County Jail on March 18, 2005 (Affidavit of Stewart Inman, Paragraph 14).

26. Stewart Inman has never used Plaintiff's personal property for his own purposes. (Affidavit of Stewart Inman, Paragraph 14).

27. At some point after Plaintiff's personal property was removed from his cell on March 18, 2005, Plaintiff requested in writing that his property be returned to him. (Complaint [13], p. 7).

28. Plaintiff's request for his property was denied by Defendant Morris on April 7, 2005 (Complaint [13], p. 7).

7

29. Certain items of Plaintiff's personal property were returned to him and/or were transferred with him to the Mercer County Jail.  (Affidavit of Stewart Inman, Paragraph 15).

30. Certain items of Plaintiff's personal property could not be transferred with Plaintiff to the Mercer County Jail on April 19, 2005 because either the Mercer County Jail or the U.S. Marshals would not allow it, and those items remain in storage at the Knox County Jail, pending Plaintiff's execution of a written authorization to allow the property to be released to a relative or other designated person.   (Affidavit of Stewart Inman, Paragraph 15).

31.  Plaintiff was never hog-tied by Defendant Morris.  (Plaintiff's Deposition, p. 81).

### Analysis

The defendants first argue that the plaintiff failed to exhaust his administrative remedies, but there is not enough information in the record to make that determination. There is no evidence on what the procedure is for exhausting administrative remedies at Knox County Jail.  Nor are there any affidavits setting forth what grievances the plaintiff filed regarding his claims.  "Exhaustion is 'an affirmative defense that a defendant has the burden of proving. . . (citations omitted) . . . .'"  *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir.2005), *quoting Dale v. Lappin*, 376 F.3d 652, 655 (7th Cir.2004).  It is true that the plaintiff has not come forward with evidence of exhaustion, but neither have Defendants come forward with evidence of non-exhaustion.  The court therefore proceeds to the merits, which is the stronger foothold in any event.

I. Excessive Force

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain." *Hudson v. McMillian*, 503 U.S. 1, 5 (1992); *Estelle v. Gamble*, 429 U.S. 97, 102-03 (1976). Excessive force is force applied "maliciously and sadistically to cause harm," not force

8

applied "in a good-faith effort to maintain or restore discipline." *Hudson*, 503 U.S. at 5. Relevant factors include the need for force, the relationship between that need and the force applied, the threat reasonably perceived by the officers, the efforts made to temper the severity of the force employed, and the extent of the prisoner's injury. *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000), *citing Hudson*, 503 U.S. at 7.

"The use of mace, tear gas or other chemical agent of the like nature when reasonably necessary to prevent riots or escape or to subdue recalcitrant prisoners does not constitute cruel and inhuman punishment." *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984)(other citations omitted). However, "[i]t is a violation of the Eighth Amendment for prison officials to use mace or other chemical agents in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain." *Id.*

The record does not allow an inference of excessive force. The plaintiff does not dispute that, on March 18, 2005, he had been ringing the bell for thirty minutes and kicking the door for ten minutes ("acting out"), only because he wanted requests slips, envelopes and paper. He also admits that he intentionally jammed the door and refused Inman's direct order to unjam the door. Plaintiff admits that he was given a warning to unjam the door or be sprayed, but he continued to disobey the order, retorting, "I don't give a fuck." He does not dispute that jamming the door presented immediate safety risks. He does not dispute his history of disciplinary reports he received while incarcerated at the Jail (though he denied the veracity of some in his deposition). He offered no ideas about what other less-forceful options Inman had to obtain the plaintiff's compliance other than a spray of mace.

Plaintiff's allegations of what happened after the mace was sprayed are also undeveloped. Defendant Inman avers that he handcuffed Plaintiff and removed him to a

9

holding cell, where Plaintiff was given access to water to rinse his eyes.  Inman's affidavit does not say anything about "hog tying," but Inman does deny it in his Answer.  (Affidavit of Stewart Inman, ¶ 10; Inman's Answer, d/e 20, ¶ 18).  Plaintiff's failure to respond is enough to warrant acceptance of Inman's version as undisputed, and the court does so.  On that ground alone, summary judgment is mandated for Defendants.  Alternatively, the court concludes that Plaintiff's deposition testimony that he was handcuffed, "hogtied," and put in the holding tank in the front of the booking room for 30 minutes after being removed from his cell is not sufficient, by itself, to raise an inference of an Eighth Amendment violation.  (Plaintiff's Deposition, p. 27).[5]  Given Plaintiff's undisputed recalcitrance and the need to restore order, there is no inference that Inman took any actions "maliciously and sadistically to cause harm," even taking the deposition testimony into account.  *See also Jones v. Shields*, 207 F.3d 491, 493, 496 (8th Cir.2000)(ten to twenty minutes before being allowed to rinse did not rise to level of Eighth Amendment under specific circumstances of case).  That is not to say Plaintiff could not have created a triable factual dispute with his own detailed affidavit, but he has not tried to do so.

II.  Conditions of Confinement

An Eighth Amendment claim alleging cruel and an unusual punishment has two requirements: 1) the deprivation suffered was objectively, "sufficiently serious," and 2) the defendants were deliberately indifferent to that serious deprivation.  *Delaney v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001)(citations omitted).  "While the Constitution does not require that

---

[5]  Plaintiff described "hog-tied" as "handcuffs behind your back, shackles on your feet, and your handcuffs and shackles are handcuffed together."  (Plaintiff's Deposition, p. 28).

prisons be comfortable, prison conditions do violate the Constitution where they 'deprive inmates of the minimal civilized measure of life's necessities.'" *Delaney*, 256 F.3d at 683, *quoting Rhodes v. Chapman*, 452 U.S. 337, 346 (1981).  Disciplinary segregation itself does not necessarily implicate the due process clause, if "such segregation does not impose an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Sandin v. Conner*, 515 U.S. 472 (1995); *Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997).

The Complaint's factually undeveloped allegations about being sick, cold and naked in the "hole" are not evidence on summary judgment.  Plaintiff does not dispute that the hole was nothing more than typical disciplinary segregation.  Nor does the Plaintiff's deposition testimony raise any reasonable inference that he experienced inhumane conditions or that the defendants were deliberately indifferent.  Plaintiff does not dispute that his own conduct is responsible for his macing and the confiscation of his property.  He does not dispute his history of disciplinary problems which resulted in his placement in the hole in the first place.  His allegations about being left naked are left undeveloped; his deposition testimony is conflicting and vague on this score.

III.  Deprivation of Property

The plaintiff does not dispute that whatever property he has not received is being held at Knox County Jail, pending Plaintiff's execution of a written authorization to allow the property to be released to a relative or other designated person.  Thus, there is no federal claim here, regardless of whether state post-deprivation remedies exist (which they do). *Murdock v. Washington*, 193 F.3d 510, 513 (7th Cir. 1999)(no due process violation where adequate state post-deprivation remedy for confiscation of property was available).

In sum, Defendants have adequately shown an absence of evidence to support Plaintiff's claims.  Plaintiff has not responded at all, much less come forth with evidence to create a triable question of fact.  Accordingly, the summary judgment motions must be granted and this case terminated.

IT IS THEREFORE ORDERED:

1)      Defendants' motions for summary judgment are granted [d/e 46, 49].  The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff.  All pending motions are denied as moot.  This case is closed, parties to bear their own costs.  The clerk is directed to vacate the final pretrial and trial dates;

2)      If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(c).  If Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.

ENTER:  September 26, 2006

s/ John A. Gorman

JOHN A. GORMAN
UNITED STATES MAGISTRATE JUDGE

12